Before us today in Re Grand Jury, John Doe 1, John Doe 2, ABC Corp. Numbers 12-1697 and 12-2878. Mr. Kaminsky, Mr. Lachine, and Mr. Robbins. Back for a reprise. May it please the Court. I am Kaminsky. Back here again. Mr. Lachine has ceded to me 11 minutes on my initial remarks and four minutes for rebuttal. Mr. Lachine will take the additional remaining five minutes. As noted, I represent John Doe 2, and he represents ABC Corp. and John Doe 1. Okay. The question I have for Mr. Lachine is how does he get instructions from ABC if it's a defunct corporation? Obviously, it must be from the Does. Yes, we're getting instructions from individuals, obviously. The company has to act through someone, and we are getting instructions. And the individuals, are they in the country? They are not in the country. They have not been in the country for five and six years, respectively. One individual gave up his citizenship, and the other one left in 2005. So it's been seven years for one, five years for the other, and one renounces U.S. citizenship. And there's no one in this country that can be a representative of ABC? Well, there's a number of people to be representatives that don't have to worry about going to jail, which is when we were here last, the government stated that and offered that if the documents should go back to ABC Corp., we would come back as they put it under the Cobbledick-Ryan rule. That was in the last argument when we convened last. Within five days, and the court relied on that, in our view, in writing its opinion. And its opinion said the law firms can return the documents to ABC Corp. ABC Corp., and it's in footnote 5 of the opinion, the majority opinion, can be held in contempt in ABC Corp. alone. And then ABC Corp., if it wished to test its law firm contempt, would come back. That ABC Corp. would be under sanctions, under sanctions alone, under your majority opinion, Judge Ambrose. And then we would come back in the initial appeal in that fashion. But the problem that the government has is that ABC Corp. really is like hitting something that isn't there. It's a defunct corporation. Any sanction against it is essentially worthless. Well, I'll get to that, and we think we have a good response for that, but give me one moment. But before we get to that, the government changed its position. That was what was, I assume, bothersome to the court here. They said give it back to ABC, and we get back below within five days, they're insisting that an individual take custody of the documents, which would be okay theoretically. We had offered the clerk of the court a la Perlman, which the government rejected. And within five days, they had sent in a proposed order before the case was stayed again, which said an individual has to take the documents, and that individual has to be subject to contempt sanctions, including incarceration. Precisely because of the concern Judge Ambrose just mentioned. Okay. If it's an ineffectual remedy, it's no remedy at all. That's their position. That's their position, but that's not an accurate position. Let me tell you our position. You get to have your cake and eat it, too. No, that's not accurate, Your Honor. The government knew what they were investigating. They were investigating since 2007 a dissolved company. You know, the government's fond of saying you take your witnesses as you find them. Well, they take the company as they find them. And you can't have two rules, Your Honor, one for a rich company and one for a poor company. Their view is if it's a rich company, okay, we'll have a sanction on the company. And if it's a poor company, somebody's got to go to jail. That can't be the law either. They take it as they found it, and the ‑‑ Well, no one's going to jail if they're not in the country and you can't get them extradited. I mean, but they do have a right to pursue their case, don't they? No, we're not arguing they don't have a right to pursue their case. What they were arguing is they don't have a right to have the company find a designee under the threat that that person will go to jail. It just supports our initial position that the two law firms can't really return the documents. It was a novel idea. It might have worked, but the government doesn't want it to work. But why shouldn't we just simply say either turn the documents over or somebody suffers the sanction of contempt, not some phantom that suffers nothing? Because there's no law that ‑‑ in our view, there's no law that supports that. You're differentiating between the rich company and the poor company. No, we're just saying that if we agree with Judge Bardell that the crime fraud exception applies in this case, every time the crime fraud exception applies, the documents get turned over. Well, if the court reaches the merits, if the court reaches the merits and decides that there has not been an error there, we think there are a number of errors, obviously, on the merits, which she'll speak to. But if the court decides that there is no error on the merits with, for instance, the standard the district court used, which we think was an error, and we don't think ‑‑ by the way, let me jump to that. We don't think ‑‑ No, I'm going to let you ‑‑ we want to hear why the district court was wrong, but I'm sort of starting at the back and moving forward. I'm puzzled by the notion that this shouldn't just be a simple case if they're right on the law, a big if. And you've said your piece extensively in the briefing, and you can do that today. But if they're right on the law, why isn't this simply a case of turn the documents over? Or if someone wants to show up and say, here I am, I'd rather sit in jail than turn them over, I have the right to do that as well. I'm not sure I understand. If the court accepts jurisdiction, is that what the court is suggesting? Yes. If you accept jurisdiction under Pullman? Either way. Either way. Let's say on the first appeal, this is not the three former counsel. If we continue to say that we don't have jurisdiction, then you have two things that can happen. You could either say that if ABC wishes, as Judge Hardiman just noted, to take possession, it should appoint a representative, and that person should take the documents and refuse to turn them over, and that way you could get jurisdiction. Or just turn it over to the district court. We'll lift the stay and allow the district court to devise its own mechanism for proceeding. And maybe one could argue that's what we should have done in June, not lift the stay, just let the court go forward. Well, look, the court will decide what it wants to do, but we think we have Pullman jurisdiction on both appeals. We think the law firm, based on the government's position, is not going to give jurisdiction purposes. On the second one, provided that Mohawk doesn't undercut. Does not overrule Pullman. And I think there's a good argument that Mohawk doesn't. So on the second one, you might have jurisdiction and we'll get, with Mr. Lachine, to the merits. But on the first one, whether you have jurisdiction or you don't have jurisdiction, or if you don't have jurisdiction, then you don't really get to the crime-fraud exception. But we need to do something. Why not the two things, the suggestion that Judge Hardiman made, or just let the district court deal with it? Well, look, let me talk about one more thing. I asked for a canvas on the case law before the briefing and the argument. When you look at who gets held in contempt, if there's a direct entity contempt, in almost all the cases, there's a stay. And there's no real sanction imposed. You lift the stay. No, I understand. But I understand if you mean it, you'll lift the stay. But I'm talking about coming up initially, that contempt is never really imposed. It's never really – the one case I thought of the last time, I happened to have a colleague who dealt with a certain case in the second district, where it was actually – there was a fine imposed by day and the company paid it. But Judge Hardiman's point is you let ABC, the person who's giving you the instructions, make the call. You make the call. Do you want to have a representative show up, take the documents, and refuse to then give them over or not? And if not – I understand. The difficulty is who's going to accept the documents under the threat of incarceration? That's the problem. You're back to the basic problem. Well, it sounds like in this example that Judge Hardiman was saying and that I was just adding on to, that may not happen. No one may show up. Because the government has created a paradigm which is outside the case law. This court put in its opinion the entity would be held in contempt, not an individual. Well, that's not exclusive. We didn't say that that was exclusive to the individuals. We were trying to solve a problem. I agree. But they actually – We thought, at least I thought, Judge Eber might have thought differently, but I think we were in agreement, and perhaps even the concurring Judge Van Esky might have agreed. We thought we were providing a pragmatic solution in a time-sensitive matter that would be amenable to everyone, and it didn't get worked out. We didn't have any problem with the solution. The government did. The government had a problem with the solution. We didn't have a problem with the solution. We made – Well, but now you're reading words into the opinion that aren't there. The fact that suggestion was made that ABC could be held in contempt was not written exclusive to a human being being held in contempt, and if this panel now decides that holding ABC in contempt is the equivalent of holding a ghost in contempt, then this panel might decide that a human being needs to be held in contempt, or in the alternative, the law firms simply need to remit the documents to the government. Let me suggest this. If the court's going to have jurisdiction in the second case, it doesn't make more sense practically to find jurisdiction in the first case and resolve them both rather than have a remand. Well, it really doesn't make much difference as a practical matter because if you find jurisdiction in the second case and you rule against you on the crime-fraud, it's sort of game, set, and match as to what you know will happen in the first case once you do get jurisdiction. I'm sorry. Your hands were covered. I'm sorry. I couldn't hear anything. If in the second case you rule that you do have jurisdiction and you get to the merits of the crime-fraud exception, and if we were to affirm Judge Bartle's decision on the crime-fraud exception, that second decision would effectively decide what would happen in the first case if ever you did get jurisdiction. Even if you didn't have jurisdiction, it doesn't make any difference because once you do get jurisdiction in some way, if that were to happen, you know what the answer would be, the crime-fraud exception. I think that's correct. That's why I suggested if you have jurisdiction in the second case that you should keep jurisdiction in the first case and find, as Judge Vanesky said in his dissent in the first case, that the lawyers can't really turn over the documents. If the order is effective, it's against them as well as a company, and they cannot return the document. Therefore, that's why Perlman was created. That's why Perlman jurisdiction exists. I'm not sure I understand that argument because as I read your briefs, what I heard you to be arguing is that an order of this court obliging the law firms to turn over the documents cannot overrule or countermand what Judge Bartle had ordered. That was not… I'm not sure I follow. Did I misunderstand that? I don't think that's what we said. What we said was the order is against the two law firms as well as against the entity, and therefore the law firms can't do anything with those documents. The court crafted a solution because otherwise the law firms can't do anything. Well, if this court now, after this argument, issues an order saying turn over the documents, it matters not what Judge Bartle had said to the contrary. Correct? If the court doesn't find jurisdiction, you're talking appeal one or appeal two. I'm having trouble. Assume we have jurisdiction. Assuming you have jurisdiction. And assume we get to the merits, and assume we say the crime fraud exception applies, and assume we say in the absence of you telling us what human being is willing to come forward and assert the privilege, we order the law firms to turn over the documents, that's the end of the matter. The law firms turn over the documents pursuant to an order of this court, and it matters not what Judge Bartle had ordered to the contrary. I think that's accurate. I don't think that's inaccurate. If the court reaches the merits and rules against us on the merits and says crime fraud controls here, the law firms, unless there's an appeal to the Supreme Court, and a stay is issued there, we would have to turn over the documents. I don't think there's an argument about that. The argument was two steps before that, which is right now the posture is on the first appeal, the lawyers can't turn over the documents. The government won't permit them to turn over them other than someone who's going to risk going to jail. That's our problem with the solution. The solution would have been fine, except for the government's position below. So maybe we put able opposing counsel on the spot and say, look, you're not entitled to make someone go to jail. You're only entitled to your documents, right? And he may well say, yeah, we just want our documents. If the court reaches a merit, that's a possible solution. Let me turn it over to Mr. Lechine. My time is up, and I wanted to save some time for rebuttal here. I thought this was just preliminary discussion. I was really enjoying it. Now I find out I have to actually make an argument. And not only that, I will say this. There's that old joke about, I'm sorry my letter is so long, I didn't have an opportunity to write a short one. I think I spent four times as much time preparing for a five-minute argument as I would have if I had had a five times longer argument. But I'm going to get to it. And that quotation attributed to Twain came to mind as I read your brief. But this is the argument. Just for the record, we should say your names. My name is Stephen Lechine, and I'm happy to be here with Mr. Comiskey. And you are representing? I represent the corporation and John Doe One. And for the truth be known, I really take my orders from Mr. Comiskey. That's who tells me what to do. But his guy's been indicted. Your guy hasn't been indicted yet, right? No, there's no indictment. Nobody's been charged in this case. I thought I read in the brief that John Doe Two had been indicted, no? No, sir. Okay. Why don't you address the crime fraud? I shall, indeed. The district court employed the wrong standard. One needs only to read the opinion to determine that there has been a – I don't know if the word is conflation or not, but there are two different steps that have to be taken in connection with the kind of inquiry that is made here. And there seems to have been some confusion, not only on the part of the lower court judge in this case, but with all due respect to a couple of appellate courts who have dealt with this same issue. And even the Supreme Court has said, you know, this is confusing. You're going to have to help me here because I'm going to ask the question because I don't want to veer into areas that may have communications that are under seal. But the attorney-client privilege doesn't extend – does not extend to communications made for the purpose of getting advice for the commission of a crime, a fraud or crime. That's correct. So the government has suggested that that communications were made for the purpose of getting advice for the commission of a crime or fraud. And your argument against that is what? Our argument is that the court employed the wrong standard. In order to deal with the issue that Your Honor has addressed, that is whether or not a crime-fraud exception should trump the attorney-client and or work-product production privilege, in this case, is a two-step process. The court first makes a determination as to whether or not there is a sufficiency, reasonable basis to suspect that an in-camera inspection would reveal evidence of a crime or fraud. That is the standard to authorize, justify an in-camera inspection. Once – and we're over that in this case. There's no question about the fact that there was some reasonable basis to suspect. Now, what happens next is that the district court then considers the evidence that is submitted. The question then is what is the standard for determining whether or not the crime-fraud exception – Now, Mr. Robbins has said in his brief that at the outset of the opinion, the court did state the correct standard. Yeah, well, here's the problem with that, if I may. Now, prima facie, like, you know, standard – burdens or standards of proof start with suspicion, reasonable suspicion, probable cause, preponderance of evidence. It's a scale. And then it goes to clear and convincing evidence, and then it goes to proof beyond a reasonable doubt, and then maybe even proof to an absolute certainty. The difference is that prima facie is a term that does not automatically describe a quantum of evidence and the difficulty that the courts have wrestled with from the Supreme Court on down, which is why the Supreme Court dodged the issue in the Zolin case. They said, we don't want to deal with this now. The issue of what the quantum of evidence necessary to make that second step is has not been resolved is still subject to question. That's what Judge – I think it was Judge Blackman in the Zolin case, which was – It was. It was. It was Blackman. Okay. So what we have – now, the truth of the – the fact of the matter is that Judge Bartle did say at the very beginning, now that we're over step one, that we need a prima facie case. He never defines what a prima facie case is. And then he goes on to say – Well, what he says, quote, to invoke the crime or fraud exception, the government must make a prima facie showing that the client intended to commit a crime or fraud and that the attorney-client communications were in furtherance of that alleged crime or fraud. He says that. Now, invoke the exception doesn't – means what? It's the petition for the exception to apply. That's what gets you to that first step. To get you to the finding, he does – But Judge Bartle does go on to say that the government makes out its prima facie showing by providing evidence which, if believed by the fact finder, would be sufficient to support a finding that the elements of the crime or fraud exception were met. That's what he says. But if you continue reading the opinion, Judge Van Aske, you find that in the paragraph where he makes his assessment, he doesn't say prima facie anything. He says reasonable basis to suspect five different times. Now, if we look at the record and we see that there's sufficient evidence that, if believed by the fact finder, would be – would support a finding that the elements of the crime or fraud exception were met, why should we send it back? Because he used this reasonable basis to suspect language. Well, first of all, there's a second issue as to whether or not we were deprived of an opportunity to continue to rebut. We rebutted what the government's evidence, and under that circumstance, we believe that a preponderance of the evidence standard should have applied and the judge should have permitted us to have argument. That is a second argument that we have raised in our papers. But the point that I was trying to make is that you call something prima facie on the one hand, and then you adopt a standard which is not a prima facie standard. Prima facie standard may be probable cause. One of the other circuit courts of appeals have said, oh, in the Third Circuit, they think that it's probable cause. Other places may believe that it's preponderance of the evidence. The point is, regardless of which of those standards applies initially, number one, it's more than reasonable basis to suspect. I want to answer your question in a minute about harmless error and why can't you make the decision. I'll get to that. But anyway, let me answer your question. No, if the judge has employed the wrong standard, it should be sent back so that we have the full opportunity to have the judge deal with this with regard to the proper standard because he might come down with a different opinion. If the judge in the lower court is told this is not just reasonable basis to suspect, you've got to find something else here. You've got to find either a preponderance of the evidence or certainly probable cause. Now that it has been rebutted by affidavit, then you have to give the other side an argument. In fact, the opinion which makes the sense, and if I have another minute, I'd like to talk about the two later opinions. One is the 2001 opinion of this court and one is the 2006 opinion. And if you want to know how we got to where we are, it's because there is an expression of confusion on the part of the court in flipping from the standard of proof necessary to get the in-camera inspection to the standard necessary to get a ruling that the exception applies. And in the case in which Your Honor was on the panel, it's Judge Slobiter's opinion in the In re Grand Jury investigation, if the court would read just the one paragraph at page 275, you see where the judge employs the wrong standard. The court said at that point, in this case the district court found that at the time of Jane Doe's January 20 conversation, she was committing the crime of obstruction. The court's finding that the government met its burden demonstrating a reasonable basis to suspect. That's why Judge Bartle got it wrong, because he followed this instead of following what Judge Sirica said in the opinion that he wrote in 2001 in In re Impounded, where he made it clear it's not just prima facie evidence, it's prima facie evidence which is sufficient. And if we're keeping score, he uses the word sufficient prima facie evidence four different times. So it's not just putting on some evidence, especially when it's rebutted by the other side. Now the government's got to come up with something a lot more than just reasonable basis to suspect. He talks about sufficient prima facie evidence, sufficient prima facie evidence, and he also says, as did the court in Trank, which is a case in which Your Honor, Judge Hardiman, sat on the panel, that where it is contested, where it is rebutted, there is an absolute right on the part of the opposing party, that is, the party that opposes the exception, to be heard with evidence and with argument. And that's an opinion authored by Judge Barry in 2006 in a case called In re Grand Jury Investigation. Wrong. Yeah, In re Grand Jury Investigation. No, it's Trank. Sorry. 2010, and it's Trank. And the court says that the opposing party does have the right to do exactly what it was that we requested of the lower court judge, which is an opportunity to present our side of the story. We rebutted it with affidavits, and then the court made a decision. What makes it hard is you've got material. They haven't seen. They have material. You haven't seen. It's not the way we typically litigate cases. I remember, fortunately, as a trial judge, I never had such a case.  Judge Van Aske was a trial judge a lot longer. Perhaps he had such a case. I had one prior experience with litigating a motion to quash in this court. My time is up, I assume. Oh, it's not. But in which we ended up with the court in bunk and had a decision in a case called In re Brown, which had to do with the subpoena and the wording of a subpoena. And I started that case, my argument, with the same thing I started this with, my argument last time, which was, I think I said it that time, when is a subpoena not a subpoena? And the answer is when it's an interrogatory, and that's what the decision was in that case. And here we have a different situation. When is prima facie proof not prima facie proof? And the answer is A, when it's rebutted, and B, when you use the wrong standard. And that's what happened here. Thank you very much. Thank you, Your Honors. Thank you for the additional time. We'll hear from Mr. Robbins. Good afternoon. May it please the Court. My name is Alex Robbins, appearing on behalf of the United States. Judge Hardiman beat me to the government's punchline, which is we just want the documents. Our position last time, we think, has not changed. It's the same as our position this time, which is we have a grand jury subpoena. It was issued to ABC Court. If that's the case, then all you want is the documents. It looked like you had concerns with respect to the nobody being there as a representative of ABC that could possibly truly suffer the consequences of being held in contempt. Is that correct? That's correct. We were concerned about that. As Judge Benesky pointed out in his concurring opinion, that was why we, or one of the reasons we had issues being in civil law firms to begin with. Yes, we are concerned about the efficacy of contempt sanctions, and we're trying on remand, after this Court's opinion came out, we're trying to craft a proposal that would give the district court its full range of discretion in trying to figure out how to come up with a contempt sanction that could actually be effective. Isn't the fastest way to get to the documents, to get a resolution on the merits? I mean, we got this dance going on of let's find somebody we can hold in contempt and have meaningful sanctions, and then we'll put the test. You will test the genuineness of their assertion of the privilege by having meaningful contempt sanctions. I recognize that. I understand that. But if they go forward and have those meaningful sanctions, whatever Judge Bartle would decide to impose, you're back here arguing the merits. Let's get to the merits. I agree. As a practical matter, absolutely, Judge Banansky. If we could waive the jurisdictional issues in this case and get to the merits, we would, but we can't. Day one, if you had issued a subpoena to Blank Rome and or Machine Whittles and not issued the subpoena to ABC, you'd have jurisdiction, wouldn't you, under Perlman? No, because of the Mohawk argument. But putting that to one side, just on the pre-Mohawk Perlman case law, yes, there would be jurisdiction. Which leads to a dumb question. Why didn't you do it that way? I'm not saying you. No, I think it's an entirely fair question. We did it that way. I don't think either party, certainly we weren't thinking that many steps ahead when we started doing this. We were just trying to get the documents to conduct a grand jury investigation. And this thing has unfolded due to a historical accident to get into the somewhat unique posture where we are now. The reason that we're making, to return to Judge Banansky's question, the reason that we're making these jurisdictional arguments is not that we don't want to get to the merits. We think the merits are a lot easier than the jurisdictional issues here. The reason we're making them is, first of all,  assume jurisdiction. And second, we feel that we have a duty as officers of the court to flag these issues for the court. Let's go to the second appeal involving the three former counsel. If Mohawk does not affect Perlman, as you argue that it does, but if it does not, then we have jurisdiction on that appeal, I take it. That's correct, Your Honor. And as Judge Ambrose said, I believe, in questioning my opposing counsel, if this court were to resolve that issue, the crime fraud determination in the second appeal, well, really the third appeal, but the second of these two appeals on the merits, that would be preclusive of, that would be the same, and it would control. You know what the answer would be once you get jurisdiction. Prior appeal. Another possibility, which we had sort of, were attempting to bring up earlier, but it didn't, another way to do it, actually, would this court, in deciding whether to grant or deny a stay, for example, would have had jurisdiction under the All Writs Act to make a ruling on the merits.  but that's another possible way this court could issue a ruling on the merits. That's not what happened, but there are many different ways to get to the merits here. All we are saying, and the reason we're here arguing these jurisdictional issues, is that hopefully in the next round of cases, in the next year, 10 years, that a court of appeals like this one doesn't have to hear successive, repeated grand jury appeals from a grand jury investigation by people who are, for all intents and purposes, parties to the underlying litigation. And that's why I think the Mohawk argument is important, because our Mohawk argument disposes of both appeals and takes care of this entire thing. And the reason... The trouble with Mohawk, and obviously we had some dicta, I predict, into the opinion the first time, but may have left out a word. The dicta sounded like it was definitely coming down on the side that Mohawk does, or the concept of Mohawk overrules Perlman. But why isn't this case, like the Ninth Circuit case in Crane, K-R-A-N-E, where Judge Thomas said, look, there really isn't that much tension. You can't say, between the Perlman decision and Mohawk, because the Supreme Court in Mohawk never even mentioned Perlman, and yet mentioned the contempt possibility. Never mentioned Perlman. And there's a, among other things, there is a strong principle that if anybody's going to overrule a Supreme Court precedent, it is going to be the Supreme Court. And not us trying to infer from a Supreme Court decision that doesn't even mention overruling another case, that somehow it did so. I think that the Seventh Circuit's analysis is better than Judge... Well, the Seventh Circuit's analysis... In Wilson, I... Judge Easterbrook was pretty clear that he was musing. Again, also dicta. But I think the reason... The principle that a Supreme Court opinion remains binding even if some of its conceptual foundations have been chipped away. And so if we were truly dealing with two different doctrines here, I think that might be a different issue. But we're not. And this is why in this... One, you've got collateral order doctrine. And here you've got the... Another, in effect, Perlman is an exception to finality. And this is not... Perlman is not collateral order. And I respectfully disagree, Your Honor. The Supreme Court's case law, this whole line of cases going back more than 100 years, is construing what it means to be a final decision within the meaning of a statute. Now it's codified at 28 U.S.C. 1291. If you read a case like Koboldick, for example, you can also look at Ryan, but I think Koboldick actually has the best example of this. Koboldick is something that's clearly on point here. It's a Cohen, I guess now one might call it, collateral order doctrine case that explicitly talks about Perlman as an illustration of the doctrine of finality. There's a whole paragraph in Koboldick about Perlman saying this is an illustration of what we mean by our case law construing final decisions. And at the end of that paragraph says that Perlman stands to the proposition that when someone would otherwise have no right of review at all, no possibility of review at all, then a decision can be effectively final. They're not different doctrines. They're simply different examples of the Supreme Court construing what it means to be a final decision and they all turn on the concept or the phrase effective unreviewability. That's in Cohen, that's in Koboldick, that's in Ryan, Alexander, Perlman, all these cases. And that's what we're arguing about here today. So when the Supreme Court says in Mohawk, I mean the Supreme Court didn't cite its entire corpus of finality decisions. It didn't cite Perlman, it didn't cite lots of other decisions. It might be on point. The collateral order doctrine requires something that's effectively unreviewable on appeal from a final judgment. Here, you don't have something that's collectively or is effectively unreviewable. Correct? That's correct. One of the prongs of collateral order doctrine doesn't really fit into the Perlman doctrine. Another reason that perhaps Crane is right. The collateral order doctrine is formulated in Cohen is, I think it's a three-step test. It's a three-step test. There's effective unreviewability, which is the same issue that you have in Perlman. It's a conclusive result of the Perlman question and it's effectively unreviewable. There are two additional requirements there, which were not, I think it's got to be conclusive and with respect to an issue, an important issue separate from the merits. And I know the importance of prongs come under a lot of... Although Mohawk, I think, pretty much went off on the third one, didn't it? Correct, exactly. And that's our argument. Mohawk dealt with the effective unreviewability requirement to get an immediate appeal under the collateral order doctrine. That is the exact same... But did Perlman do that? Yes. Perlman is, again, as Kobeldich explains, an example of a situation where an order is adverse and effectively unreviewable absent immediate appeal. And the reason it's effectively unreviewable is because the person who is the privilege holder in Perlman is a, under the Perlman doctrine, is a stranger to the litigation and otherwise would have no avenue to pursue a post-judgment appeal. When the person is a litigant, then... You're saying the subject of a grand jury investigation is a litigant? Yes, Judge Naskin. And I think that's... A judge is not a target, right? A target would be somebody that's clearly in the sight of the government, a subject is somebody... Maybe they're going to be in our sights. The U.S. Attorney's Manual definition of target is, I guess, a putative defendant and subject is someone whose conduct is being investigated by the grand jury. We think, as this court said in what we feel is an analogous circumstance in its recent In Re Grand Jury case, I realize it's not that helpful. It's 635 F. 3rd. 101.  In the Dubella context for a motion for return of property, this court said being a target or a subject of a grand jury investigation is a status, in that case, that means you don't have the right to an interlocutory appeal. And so we would suggest that case as a very recent example where this court has held that the status of being a target or a subject of a grand jury investigation is dispositive for purposes of whether you fall under 1291 or not. Let me go back. You said something earlier that piqued my interest in terms of a way to break this... Break out of this morass we're in right now, and that is we could vacate the stay. Let the matter go back to the district court while we wrestle with this jurisdictional question. I guess you're saying... I wanted to understand what your approach would be on that. Your approach would be, as I understand it, that in terms of staying the matter in the district court, we would look at the traditional stay factors and say, you know, after all is said and done, they don't have a reasonable likelihood of prevailing on the merits here. Let the matter proceed in the district court while we wrestle with this jurisdictional conundrum. Your Honor, I think yes, with one caveat. I think you would actually... In order to reach the merits, you would have to... This court would have to... Again, this is a respectful suggestion. I'm not telling this court what it ought to do, but one way to reach the merits would be to say, we have decided that the appellate's claims are meritless, and therefore, there is no reasonable likelihood of success on the merits. This court undisputedly has jurisdiction under the All Writs Act to reach the merits in the context of granting or denying a stay. We had explored that issue and didn't have a chance to sort of make that case to this court in the stay litigation, but that would be another way to reach the merits of this case. Again, just a theoretical possibility. The other way... I mean, there are a variety of other ways. If this court decides our Mohawk argument is wrong, then you could also reach the merits with respect to that and not have to deal with, I think, the minor premise, essentially, that divided this panel last time. There's no dispute about the... From the first appeal, there's no dispute about the major premise. If the contempt right is open, you don't get a parolement appeal. If the contempt right is closed, you do get a parolement appeal. As I understood the opinions, the dispute was solely on the minor premise of that syllogism. Is the contempt right open under these facts? I think that this court's discussion of the major premise, the contempt right being open or closed, is very valuable, and we certainly hope that... When this went back, the opposing side had suggested two options. One, Blank Rome could transfer documents to the court. Or two, the government could stipulate that even if the documents would remain in the physical possession of Blank Rome, they're being held by Blank Rome only and solely as an agent for ABC. And if ABC decided to refuse to comply, then only ABC would be subject to contempt sanctions. You objected to that, or whoever the government objected to that, saying that that doesn't allow for meaningful contempt sanctions. But if you get the documents somehow, do you really care? No, not at all. We just want the documents. If we get the documents, this all goes away, everyone's off the hook. What we are trying to avoid is a situation where... So it really goes back to Judge Hardiman's question at the outset, doesn't it? I think, and that's why I started with Judge Hardiman's question, is that we just want the documents. What we are afraid of happening is being in a situation where we are unable to have meaningful contempt sanctions. And there is no choice put to ABC Corp as to whether to take a contempt appeal or not, because it's a ghost, as I think the court said when my opposing counsel was up here. So our concern is that we're in a situation where there's contempt only on paper, or soft contempt, as Mr. Kaminsky keeps referring to, which we think is not appropriate. But you don't care if you get the documents, do you? I mean, is the government concerned that somehow you wouldn't get the documents? And that you really have to have a hard contempt sanction in order to be sure that you get the documents? But let's say the court fashioned something whereby you do get the documents. I mean, for example, it says... Right now, we send it back and allow the court, we say, or allow the court to say, ABC, it's your call. Pick a representative. If you don't pick a representative, then the documents must be given over. That is an order to blank row. And they'll comply. They're not going to be held in contempt. And all we were trying to do the last time was really try to help fashion something or allow something to be fashioned that doesn't hold the law firms in contempt, allows a process to go forward to see if ABC really is going to come forward and this defunct corporation and do something that really puts the appeal into play so that we can reach the crime fraud exception. If, as Judge Hardeman and I believe at that time, that we didn't have jurisdiction. I think I agree with, and I'm not, I don't want to say I disagree, but I don't entirely understand. I don't want to misunderstand you. Our goal was never to fashion sort of a formality or a means to appellate review. Our goal is to get the documents. And that's been our concern throughout. We agreed with this position. What was the purpose of saying to Judge Bartle that we need to have a hard and real contempt sanction available with respect to ABC? To force ABC to choose. If ABC wants to pursue a contempt appeal, then it has to actually be held in contempt. But are there not other ways to force ABC to choose? Not that we're aware of, frankly. We think we need either a human being or property. What might be one. And that's why, what we were attempting to do, and when we read this Court's opinion, we thought we got all the relief we wanted. And we read Judge Vanaski's opinion and said, you know, if there were stipulation that the law firms would be off the hook if ABC chose the contempt route, then we wanted to be responsive to that too. Because we have no intention of holding the law firms in contempt if, if, it's conditional, if ABC chooses to go down the contempt route. So our proposal to the District Court was to allow the District Court the maximum degree of its discretion in coming up with a contempt sanction. It could be incarceration, which requires a person. It could be monetary sanctions, which requires property. But something that the District Court has jurisdiction over that it couldn't use. Why not, for example, say, latch on to the first suggestion that the appellants made, which was, why the clerk of court? I assumed you didn't want that, because then when you go to get the documents from the clerk of court, then somebody overseas on behalf of ABC asserts the privilege and says, no, you don't get to turn them over. So we're in this strange standoff. Well, is that not where the District Court is headed? We, we could create, I think, if the question is, could we come up with a way to create Pearlman jurisdiction, sort of pro forma, by having a soft contempt sanction against someone like the clerk of the court, then the answer is yes. But we don't think it's appropriate to do that for the reasons explained in this Court's last decision. That we're not agreeing to a soft contempt sanction. We don't think that this ABC Corp should have any more rights than any other normal litigant in any other corporation when it has to either choose to take a contempt appeal or comply with the District Court's order. All right, let me ask you a question that I'm going to ask Mr. Comiskey and Mr. Lesheen as well. What is your view, if this panel believes that no one should go to jail, the law firms are stuck in the middle, but the government's entitled to the documents, and if that's the view of the panel, a large if, wouldn't the most prudent course to effectuate those views be simply to lift the stay and allow the matter to run its course in front of Judge Barnell? Yes, Your Honor, and we would, and that's why we sort of fought so hard on lifting the stay after the opinion and then getting the stay lifted after it was reimposed, because we do think that this is the logistics of how exactly to frame a contempt sanction that will work in this particular case with these particular parties is something very much subject to the discretion of the District Court, and we think that it's the District Court's job to figure out how exactly to impose the sanction, and we are willing to help it, and that's what we would like to go forward and do. We are back here because there's a stay, and so we need to re-litigate the, or not re-litigate, litigate the second appeal, but no, our position from the beginning, and it certainly still is, is that the reason there's a rule, a general rule against interlocutory appeals is precisely this case, is because when we're conducting, when Mr. Murray, sitting behind me, the trial attorney in this case, is conducting a grand jury investigation over the course of a year, year and a half, that we can't be coming back to the Court of Appeals every few months to litigate another of the District Court's discovery orders, and that is, frankly, why we think that our Mohawk argument is meritorious and is, in fact, a simpler basis for this panel to decide this appeal on. The arguments rejected, and I see my time has elapsed. Thank you, Your Honor. The argument rejected in Mohawk is indistinguishable from the argument that the appellants are making here. The argument in Mohawk was, and it was an argument that this Court accepted before Mohawk, which is, even if I'm a civil litigant and I get an adverse discovery order, it's going to breach my attorney-client privilege or what I claim is my attorney-client privilege. If that issue were squarely presented to the Supreme Court, does the rationale of Mohawk, should it be applied to the fact pattern of Perlman, one might make a sizable bet that you would win, but that's really up to the Supreme Court to decide, isn't it? And I respectfully disagree. It is controlling on the exact same issue. The issue in front of the Court in Mohawk is, what does it mean to be here? No, it's not the exact same issue. One's a grand jury context and one's litigation. It could be a question of who is a litigant. Yes, and I think that's a closer question. We could spend the next nine months working that out or we could just lift the stay. That is correct, Your Honor. You're looking for something pragmatic. He's talking about something pragmatic, isn't he? Absolutely. And I appreciate and respect that. We are looking both for a pragmatic solution to this case, which we think would be easiest with a ruling on the merits, and we are also looking to advance the interests of our client, who is a repeat player in these courts, and interpret the Supreme Court's most recent case law on what it means for a decision to be effectively final within the meaning of 1291. Well, speaking only for myself, I, you know, we're obliged to give you and the able counsel at the other table as much guidance as we can, but there are certain cases where it can be done feasibly depending upon what time constraints are at issue, and there are other cases where it can't, and I'm just suggesting this might be one where discretion is the better part of valor, where we try to solve the problem that everyone's having rather than trying to articulate the law for the benefit of replete players, whether it be the government or not. Absolutely, Your Honor. I would imagine your co-counsel sitting over there has got the Al Davis theory. Just win, baby. Absolutely. I've apologized to him a number of times in the process of this litigation. We, you know, as sort of on appeal, we're in an interesting situation where we're concerned both with the case in front of us and with the government's position more generally. I do just one final sentence on the Mohawk. If this were, and I think Judge Hardiman has it exactly right, the question here is are they litigants? Because if this were a case where you had criminal defendants, say at trial, who are criminal defendants, I don't at least think, I think it's a much easier call there that Mohawk does apply. Even though Mohawk is civil and the case would be criminal, Mohawk would still apply because they're parties to the litigation. The question here is are grand jury subjects and targets parties, and we think that the best analogy to that is this court's 2011 case from last year. Slippery slope you're going down there, though. You know, you can have that hurt you in other contexts to call them parties to the grand jury proceeding. I think that's something subject to this court's case-by-case decision making. We think that this falls within the definition of parties. One purpose, but not parties for another purpose. Yeah, you're asking us to open the door. Yeah. We are asking the court to go, we believe, no further than it went last year in the case we cite, but, yes, we are asking for an application of the Mohawk case. Well, last year we never decided the Mohawk issue. We did have some dicta in there, but we never decided it. I understand, Your Honor. That's why we're asking for it now. Thank you. Thank you. Mr. Kaminsky. Would you mind starting with the, I don't want to forget, that I intended all lawyers to answer the question I posed to Mr. Robbins, if you remember it. I'm sorry? Would you address the same question that I posed to Mr. Robbins that I gave you a forewarning I was posing to you and Mr. Lechine as well? Do you need me to try to restate it? Please, there were a number of questions. Now I need to try to remember it. If this panel were to conclude that Judge Bartle basically got it right on crime fraud, however, you know, this isn't about being punitive and throwing anyone in jail. It's not about casting aspersions on these law firms. It's about just getting the documents. If that's the way the panel sees it, what is your view as to the propriety of us simply lifting the stay rather than working through what I think we can all agree are some fairly challenging legal issues? Well, Judge, you have to get to a Mertz ruling somehow, either on the second appeal or the first appeal. If there's a Mertz ruling somehow, the first appeal will take care of itself. There's a Mertz ruling on the second. Without a ruling on either, I'm not sure there's a solution. If you're somehow lifting, say, without a ruling on either side. Well, if we lift the stay, that's not a solution. Why? Tell us why that wouldn't be a solution. Doesn't the court have to at least decide whether it has jurisdiction as opposed to just telling the lower court to? While we're pondering whether we have jurisdiction, we have the power certainly to lift the stay in the interim. Let me make it easier. Let's forget the second appeal for the moment. Okay. Let's say it's just the first appeal. Okay. And the stay that was put back in place in June is just lifted. Okay. The problem at the moment is if the government would agree that it goes to someone like the clerk of the court, so there's a possibility of ABC, if they decide to hold itself in content, that's fine. But the paradigm the government has set up is there's nowhere to go now because there's no individual that's going to accept those documents with the threat of incarceration. There just isn't. They've created a paradigm where you have, again, a rich corporation and a poor corporation. And where the poor corporation or the ghost, as the government put it this morning, has the final say. But that goes back to the question we asked before. What if Judge Bardo or we were to say, okay, fine, ABC, it's your call. The ball's in your court. You decide. Stay's lifted. And the ABC, you can send a representative in or you won't.  If you do send a representative in, tell the representative to be prepared that there may have to be. Bring your toothbrush. Bring your toothbrush. There's no case law. I hear the court. But in all the cases dealing with this issue, nobody's made that type of distinction. So if there is no case law and you're asking us to decide, we may make the case, right? I understand the court can do that. But we're suggesting that these cases normally get stayed. The contempt sign can get stayed. Nobody goes to jail. In fact, all the cases we canvassed, the contempt sanction got stayed so the appeal could be taken, even against the entity, forgetting against an individual. Let me cover a couple of them. But those are cases where the appellate court hasn't given due consideration to the issues presented. And if nothing else, we've certainly done that. Yes, but if you don't get to the merits, you haven't gotten to the merits. That's the difficulty. I think you have to get to the merits. Let me make a couple of comments, please, before I run out of them. I'll be happy to get back to them. I'll just say one or two other things. One, we're here again because we had asked—I want to put this to bed. We had asked the government to file one set of motions for all the privilege issues. They refused to do it. Judge Bartle didn't require it. But we're not here because we wanted to be here at Syriacum Times. The government decided to conduct that investigation that way. That's okay. But we shouldn't be criticized for coming back to the appellate court. If I can continue for another moment or two, Your Honor? Give me one more minute, yes. Thank you. Second, on Mohawk, we thought about that some more. Here's the difference. Mohawk dealt with a discretion due to the trial judge in controlling its own docket. This is a grand jury matter. The judge doesn't have it, doesn't have a docket, doesn't have— again, whether you want to argue about litigants, this is— in the case set by Judge Bartle, Lewis v. Williams, which is in his opinion, you're at arm's length with a grand jury. It's an independent body. The judge isn't controlling people before him in a proceeding. It's dramatically—as we read it again and again, that's the difference we see. And dealing with the Cohen Collateral Order Doctrine and Mohawk, you're dealing with something controlled by the judge, the special deference due to the trial judge. You don't have a special deference here because he's not controlling anything. It's a grand jury. It's at arm's length. It's independent of the judge. He has certain jurisdiction, but not a lot. Let me cover one other point, harmless error, which Judge Vanesky brought up. The Rule 52 cases cited by the government deal with— pre-indictment and post-conviction. There's no Rule 52 case that we know of saying that you can't take care— where the court cannot intervene on a privilege breach or an alleged privilege breach in front of a grand jury by applying harmless error. We don't think the Doctrine applies at all in a pre-indictment setting. Last item, Your Honor. Hopefully this was just a—this was not—this was—the court has it right. If, in fact, somebody has been charged here, we shouldn't be here at all. We shouldn't be here at all. They shouldn't be seeking documents against somebody who has been charged. If that has happened, if it's a slip, that's fine, but I raise that before I sit down. We shouldn't be here at all. There's no way to pen a charge. But you said, both of you, that there has been no indictment decision. Not that we know of, but there's under-sealed material here. So we point out to the court, if somebody has been charged, and that wasn't just a slip of the tongue, i.e. that I didn't recognize that the court wasn't clear on facts, that if somebody has been charged, they shouldn't be looking for documents. You can't conduct discovery, as we know, post-indictment. Okay. Thank you very much. Thank you. Can we ask you? Go ahead. Mr. Lechine, would you address the question? It's not fair for you to ask me to tell them how to do their job. There is a way out of this, and there is a practical way. And I think the court may very well have been edging in that direction. But frankly, the government ought to come up with that. There are ways to do this. I think one of the things that's complicated this matter is because the custodian at the moment, which is blank Rome, is one of the counsel in the case. If it was a third-party custodian, then the case would go up on a Perelman appeal and would be decided probably fairly quickly. But the question is, if we decide that the government is entitled to the documents, isn't the path of least resistance just to lift the stay? And then the firms will, upon order of Judge Bartle, turn the documents over? That puts us really on the horns of the dilemma, since although we do have a court order, we have clients who have their own interests and to whom we owe at least an equivalent duty to follow their direction. But then the trial judge, if you, the law firms, communicate to Judge Bartle, my client is not allowing me to turn over the documents, then that trial judge simply says, bring the client to my chambers or to my courtroom. And then the client can show up or suffer the consequences, namely the turnover of the documents. We all know what's going to happen here. The clients, if they're overseas, they're not going to show up. They're not showing up. So the documents need to be turned over. To get us off the hook. Can I have one second? Can I tell him? You can confer if you wish. Go ahead. Look, all the judge ever had to do would be to appoint a representative and direct us to turn it over to somebody else. You were getting close to that, Judge Ambrose. I mean, we've been dancing on the head of this pin, but it's because of the choices that the government made. Well, they're afraid if you appoint a representative, then that representative, whether it's the clerk of court or somebody else, is going to invoke the privilege. And then we're back to square one. We have the appeal on the merits and case is over. And that's exactly right. But at least we wouldn't be having a five-minute argument on the merits from somebody that's barely articulate, meaning me. We would have a 25-minute argument on the merits and we'd be able to explore them fully and then have the matter decided and it would be no problem. That's what should have been done. You guys have had an hour and five minutes, though. I mean, it should have been done. Judge Ambrose was edging. I thought you were going to get there. You were getting closer and closer and closer. And that's what I think that Judge Bartle may do. You're right. That was the next step. But we're there. Either you let the company appoint it or the judge appoint it. Real simple. But at this point, the reason that we would love to go with this further is that Judge Hardeman and I have another hearing right after this. It won't be as much fun as this one. It won't be. No, it will not be. I would like to thank counsel for